[No. 34377.   *En Banc.*   April 23, 1959.]

GEORGE TWIDWELL *et al., Appellants,* v. MARY ELLEN DAVIDSON, *Respondent.*[1]

*Stanley J. Krause,* for appellants.

*Edwin R. Johnson,* for respondent.

[1]Reported in 338 P. (2d) 326.

DONWORTH, J.—This is an appeal from a judgment of dismissal entered upon a verdict for defendant in *one* of two actions which were instituted by each participant in an automobile-truck collision against the other for damages resulting therefrom. The two causes were consolidated for trial.

Plaintiffs in the case now before us were defendants in the other action (Grays Harbor county being joined as codefendant).

When the word "appellant" is used in the singular, it shall be taken as meaning plaintiff husband, and we shall refer to Miss Davidson (who was sole defendant herein) as "respondent." She has made a motion to dismiss the appeal on grounds stated below.

Because these two actions were tried together before the same jury, it is necessary to state rather fully the proceedings had in the trial court and in this court.

These actions arose out of a collision which occurred December 23, 1955, about 5:45 p. m., approximately three fourths of a mile east of Montesano on United States highway No. 410. At this point, the paved portion of the highway is about twenty feet wide. It is divided into two lanes by the usual white median stripe. It was raining slightly at the time and the pavement was wet.

Respondent was alone in her Chevrolet sedan, driving westbound. Appellant, a county employee, was alone in a pickup truck, owned by Grays Harbor county, traveling eastward. The left front portions of each of the vehicles came into contact. Both drivers were injured, respondent more seriously. Each vehicle was damaged beyond repair.

On February 9, 1956, respondent filed a claim against Grays Harbor county through its board of county commissioners. She claimed damages of twelve hundred dollars for the loss of her automobile, and fifty thousand dollars for personal injuries. The county commissioners failed to act upon this claim.

September 19, 1956, appellants commenced suit against respondent to recover over twenty-five thousand dollars damages for personal injuries sustained by Mr. Twidwell.

This action was cause No. 48134 in the superior court for Grays Harbor county.

September 24, 1956, respondent filed her answer in cause No. 48134. At that time, she instituted a separate suit for $186,500 damages (Grays Harbor superior court cause No. 48148) against appellants and Grays Harbor county.

The allegations of negligence contained in the respective complaints are in substance identical. Each driver contended that the other negligently entered his, or her, lane of travel, thereby causing the collision. Respondent's sole basis for claiming judgment against Grays Harbor county was that Mr. Twidwell was in the course of his employment at the time of the collision, and his negligence was imputed to the county under the doctrine of *respondeat superior*.

All parties asserted affirmative defenses in their answers, respondent alleging, in cause No. 48134, that the collision was caused solely by the negligence of Mr. Twidwell and his employer. Appellants and the county alleged, in cause No. 48148, that the sole cause of the collision was respondent's own negligence. In each case, these affirmative defenses were based upon allegations that the plaintiff driver had negligently driven his vehicle into the lane of travel occupied by the defendant driver, thereby causing the collision. In addition, the county affirmatively alleged that respondent's recovery should be limited to $51,200, the total amount of damages set out in the claim which she had theretofore filed.

Issue was joined in each case by respective replies. Upon agreement of counsel, the cases were consolidated for jury trial purposes.

After hearing the evidence, the jury returned a verdict in both causes in favor of respondent.

Post-trial motions of appellants in cause No. 48134, and appellants and the county in cause No. 48148, for judgment notwithstanding the verdict of the jury, or for a new trial, were denied by the trial court after argument. Judgment was entered June 6, 1957, (1) dismissing, with prejudice, cause No. 48134, and awarding costs to respondent; and (2)

awarding respondent damages of $65,984, together with costs, against appellants and Grays Harbor county, jointly and severally.

, On June 13, 1957, the county filed its notice of appeal from the judgment entered in cause No. 48148. On June 20, 1957, appellants filed their notice of appeal in cause No. 48134 and joined with the county as appellants in cause No. 48148. This court acquired jurisdiction of both cases upon appropriate service of these notices of appeal.

In this court, superior court cause No. 48134 became No. 34377, and superior court cause No. 48148 became No. 34376.

On November 22nd, respondent filed with this court her motion to dismiss either or both appeals,

". . . based on Rule 51 of the Rules of Appeal of this Court, and for the reason that the judgment obtained by Respondent as against the Appellants in the consolidated causes, in the sum of $65,984.00, has been fully settled, compromised and paid by the said Appellants and their insurance carrier, and the Judgment satisfied and the appeal [of Grays Harbor county] dismissed and that such action as has heretofore been taken is res judicata and, therefore, bars further appeal and automatically terminates all further proceedings in these causes. . . ."

This motion was supported by the affidavit of respondent's counsel, which recites, in part:

"That on October 8, 1957, the judgment in Superior Court Cause No. 48148, which is No. 34376 in this case [court], was fully satisfied of record on payment of the sum of $59,385.60. That of said sum, Grays Harbor County paid the sum of $13,500.00 and the Insurance Company of North America, which insured Grays Harbor County with George Twidwell as an additional insured under the policy, paid $45,885.60 . . . That inasmuch as the matter of Respondent's interest herein has been fully satisfied by the Appellants, as above set forth, it is urged that the appeal presently pending is res judicata and should be dismissed under Rule 51 of the Rules of the Supreme Court, and for the reasons set forth above . . ."

On January 7, 1958, counsel for appellants filed a counter-affidavit, which recites, in part:

"That affiant is informed and believes that the attorney for the respondent and the attorney for the appellant, Grays

Harbor County, entered into a Stipulation that the appeal of Grays Harbor County be dismissed pursuant to Rule 19 'Rules on Appeal.' That on or about the 8th day of October, 1957, an Order was entered in the Superior Court of the State of Washington for Grays Harbor County pursuant to the Stipulation, that the defendant, Grays Harbor County's, appeal was dismissed.

"That the appellants, George Twidwell and Vivian Twidwell, his wife did not enter into said Stipulation, nor were they or their attorney served with Notice of Hearing or said Stipulation and Order dismissing the appeal of Grays Harbor County. Nor did the Order dismiss the appeal of George Twidwell and Vivian Twidwell, his wife herein. . . ." ·

Appellants at that time filed a brief resisting respondent's motion for dismissal of their appeal in either case, arguing that the trial court was without jurisdiction to enter its order of October 8, 1957, dismissing the appeal of Grays Harbor county. Appellants also filed a motion for consolidation of both cases for the purpose of appeal.

On January 14, 1958, respondent filed a reply brief, in which she contended, in part:

". . . In this case there was a *voluntary* payment by all of the Appellants in satisfaction of the judgment and all of the parties wanted to be released from the judgment and they were so by the satisfaction of the judgment. That settled all of the controversies. . . ." (Italics ours.)

Appellants' motion for consolidation of these cases on appeal and respondent's motion for dismissal of either and/or both appeals were argued to this court January 17, 1958. We dismissed the appeal in cause No. 34376 per motion-docket entry of that date. Respondent's motion for dismissal of cause No. 34377 was ordered passed to the hearing on the merits. This disposition dispensed with the necessity of our passing on appellants' motion for consolidation.

No petition for rehearing of respondent's motion to dismiss having been filed by appellants Twidwell within the time prescribed by Rule on Appeal 50, 34A Wn. (2d) 55, as amended, effective January 2, 1953, judgment was entered February 18, 1958, dismissing their appeal in cause No. 34376, and our remittitur was forwarded to the superior

court. Thus, the judgment of the trial court in superior court cause No. 48148 became final.

A majority of the court being in favor of denying respondent's motion to dismiss the appeal (although I do not concur therein), the motion is denied.

Coming to the merits, the sole assignment of error is that the trial court erred in admitting (over appellants' objection) the testimony of Captain Corning of the Seattle police department as an expert witness, who, after having looked at one photograph of each vehicle taken sometime after the accident had occurred, and after having examined a diagram drawn by appellant purporting to show the respective positions of the vehicles just before and after the impact, expressed his opinion as to whether the collision could have happened in the manner claimed by appellant. In short, it is argued that the expert was permitted to answer the ultimate question which the jury was called upon to decide.

The circumstances under which this expert testimony was admitted were as follows:

Two eight-by-ten-inch photographs were admitted in evidence, one taken at the scene of the collision showing respondent's Chevrolet after the left front door had been pried open and respondent had been removed therefrom, and the other taken at some later time showing the condition of the county pickup truck after it had been removed from the scene. These photographs clearly show the left front quarter of each vehicle to be severely damaged. They also tend to indicate that respondent's Chevrolet sustained a greater amount of compression damage, assuming the resistance of the pickup body to be equal to that of the Chevrolet.

It is argued that, because we cannot determine from these photographs the respective directions of travel of the vehicles (their relative positions to each other) at the point of initial contact, the matter, being beyond the realm of common knowledge and experience, is a proper subject for expert testimony. Since the expert witness had testified affirmatively that, by looking at the pictures, he could give an opinion as to the relative positions of the cars, respondent

contends that the admission in evidence of his conclusions (which were objected to *inter alia* as an invasion of the province of the jury and as not a proper subject for expert testimony) was not an abuse of judicial discretion.

This is not a case involving the admissibility of the conclusions of an expert who has examined the *two objects* concerning which his opinion testimony is offered. Here, the opinion evidence was based solely upon the witness' interpretation of *one* photograph of each object.

In recent years, rapid advancements have been made in the fields of accident prevention and investigation. Science is playing an ever-increasing part in this program. One of numerous institutions contributing immeasurably to the dissemination of knowledge in traffic control is The Traffic Institute of Northwestern University (which was attended by the expert witness in this case). This institute has published a "Traffic Accident Investigator's Manual for Police" (3d ed., 1957), which, in chapter 53, treats the subject of accident reconstruction. Section 53.345 reads, in part, as follows:

"*Examine damaged vehicles* to get information needed to determine their positions during collision. Study of the vehicle itself is always best, but lacking this photographs will often do. Generally *at least two pictures of each vehicle are needed* unless the damage is rather slight. Trying to work from memory or notes, particularly those of another person, is rarely satisfactory, even when examination was by a mechanic. Study the vehicle or pictures for collapsed parts, look for indications of direction of force and try to fix contact points by imprints or rub-offs as explained in 37.235." (Last italics ours.)

"Transfer of paint and tire rubber may help you identify the exact parts engaged and this can lead to an establishment of the angle of collision and point of maximum engagement. . . . Measure the wheelbase length and wheel position for amount of distortion." § 37.235.

"*The point of initial collision and direction of force.* From the damage, the direction of force doing it can usually be closely approximated. Damage to specific parts such as bumpers, fenders, doors, glass, axles, wheel suspension, wheels, and engine, as well as cuts in tires, frame distortion,

and injuries to occupants, are sources for such information. . . ." § 37.240.

Conceding that it is scientifically possible to reconstruct the initial point of contact from an examination of the damage sustained by vehicles involved in a collision, in this case no such examination occurred; nor did the expert have an opportunity to examine two photographs of each vehicle as suggested in § 53.345, above quoted. Without ever having seen the vehicles and having seen only one picture of each (which furnished no substitute for the visual perception afforded by two pictures), the expert witness, in answer to a hypothetical question, testified:

"A. At the time of impact, the cars were coming toward each other, (Illustrates with toy car and truck) and the truck was at a slight angle to the car in such a manner that it was headed in towards the left front corner in this manner. This is shown by the way damages are shown in the picture. *In the car it shows the damage, the force, was in this manner.* (Illustrates) *In the truck the force is such that it cuts the corner off,* and that shows from the appearance of the damage, and I have examined a great many cars where there was no question as to the directions. It shows that the direction of the truck is to the . . . [Objection made and overruled.] So that I know from the appearance of the pictures that at the time the truck was at a slight angle and headed in towards the car, at approximately this angle. (Illustrates) It was in such a manner that if the car was going straight that would be the angle, and if the truck was going straight, that would be the angle. . . ." (Italics ours.)

■ Recently, in *Gerberg v. Crosby,* 52 Wn. (2d) 792, 329 P. (2d) 184 (1958), we quoted with approval from the American Law Institute's Model Code of Evidence 199, Chapter V, *Expert and Opinion Evidence,* Rule 401, in part, as follows:

"Rule 401. Testimony in Terms of Opinion.

"(1) In testifying to what he has perceived a witness, whether or not an expert, may give his testimony in terms which include inferences and may state all relevant inferences, whether or not embracing ultimate issues to be decided by the trier of fact, unless the judge finds . . .

"(b) that the witness can readily and with equal accuracy and adequacy communicate what he has perceived to the trier of fact without testifying in terms of inference or stating inferences, *and his use of inferences in testifying will be likely to mislead the trier of fact to the prejudice of the objecting party.*"

Assuming that it was possible for this expert to accurately determine the direction of force exerted by each vehicle upon the other and the maximum point of engagement (as stated in §§ 37.235 and 37.240 of the Traffic Accident Investigator's Manual, above quoted) by examining only one photograph of each vehicle, and assuming further that the exhibits supply a sufficient foundation for the admissibility of such inferences, it nevertheless appears that the witness could "readily and with equal accuracy and adequacy communicate what he has perceived to the trier of fact without testifying in terms of inference." Hence, all of the expert's answer, except that portion relating to the direction of force (above italicized), was unnecessary. Its prejudicial effect is later illustrated by his testimony that the collision could have occurred as related by respondent, but could not have occurred in the manner narrated by appellant.

The witness was shown a freehand drawing made by appellant showing the latter's recollection as to the positions of the vehicles at the point of initial contact, and was interrogated as follows:

"Q. So to follow that question right along, what, in your opinion, or do you have any opinion, as to the position of the cars, where they would have ended up, if it had occurred in this manner? A. Yes. [Objection made and overruled.] Q. What is that opinion? A. If the accident had happened in the manner shown on Plaintiff's Exhibit 1, the truck, instead of ending up on the highway, would have ended up in the ditch, since the cars, when they hit in this manner, pivot in about the center, and the car on this side of the road would have been distinctly in the ditch, when it hit that way. (Illustrates)."

9C Blashfield, Cyclopedia of Automobile Law and Practice (Perm. ed.), 508, § 6312, reads, in part:

"Expert testimony is not admissible to prove that cars involved in a collision could not, if struck in the manner and under the circumstances testified to by other witnesses, have moved or come to rest in the manner testified to. In support of this rule, a California district court of appeal cited the following statement from the case of *Fishman v. Silva*, 2 P. 2d 473, 474, 116 Cal. App. 1:

" 'It is needless to add, as in all such cases, there is presented a wide field for argument, the main theme of which is physical facts and the so-called immutable laws of physics. Contentions based on these foundations are usually not convincing, strange as it may seem, for the simple reason that in partisan presentation there is an ever-present temptation to forget essential facts which do not fit in. For instance, where it is argued that, where there is a contact of two bodies in a given position, the direction of the applied force will control the position of the bodies after the impact, any rule or law, in the abstract, will be found of little value when we have the additional factors of each body in motion and controlled by independent agencies. Experience has shown the futility of attempted demonstration in accident cases; there are too many varying factors. Among these variants we may class indefinite rate of speed, condition of the highway, judgment or lack thereof in the drivers, a direct blow or a glancing one, and the balance or equilibrium of each car at the time of impact.' "

In *Linde v. Emmick*, 16 Cal. App. (2d) 676, 61 P. (2d) 338, at page 686, we find this applicable statement:

" . . . One of these [expert] witnesses was also allowed to express his opinion, based on the damage to each car and its position when stopped, that the Cadillac struck the Pontiac at an angle of forty-five degrees; that the impact would tend to throw the Cadillac to the left, which movement appellant could not have prevented. The fallacy and inadmissibility of such opinion is well pointed out in *Fishman v. Silva*, 116 Cal. App. 1 [2 Pac. (2d) 473], and in *Johnston v. Peairs*, 117 Cal. App. 208 [3 Pac. (2d) 617]."

■ We are convinced that the trial court abused its discretion and committed prejudicial error in at least two respects, either of which should be sufficient to warrant the granting of a new trial:

(1) In permitting this expert to usurp the function of the

jury by admitting his opinion testimony based solely upon an examination of the photographs; and/or

(1b) In permitting the expert to testify in terms of inferences, where with equal accuracy and adequacy he could have testified as to the matter perceived in the photographs without testifying in terms of inferences (assuming that the expert should be permitted to testify as to direction of force from these photographs); and

(2) In permitting the expert to testify as to the positions the vehicles would have taken if the collision had occurred in the manner related by appellant.

In effect, what was done in this case was to permit a police officer, after examining one photograph of each vehicle (taken after the accident) and a diagram drawn by one party showing their approximate positions at the time of and after the impact, to tell the jury whether, in his opinion, the accident could have happened in the manner claimed by the opposing party. Thus the expert, by telling them which version of the accident was more worthy of belief, was permitted to perform the function of the jury, who were the sole judges of the credibility of the witnesses. If this practice is to be permitted, the trial of automobile negligence cases will be a contest between expert witnesses who, upon examining the exhibits and hearing the testimony, will advise the jury which party should recover.

No criticism of Captain Corning, the expert witness in this case, is intended. His qualifications as an experienced police officer who has investigated numerous automobile collisions is not questioned. Involved here is the admissibility of the opinion testimony of any expert witness under the circumstances described above.

For the foregoing reasons, the judgment is reversed with directions to grant appellant a new trial.

HILL, FINLEY, ROSELLINI, OTT, FOSTER, and HUNTER, JJ., concur.

WEAVER, C. J., concurs in the result.

MALLERY, J., dissents.