[No. 37380.   Department Two.   June 10, 1965.]

DONALD GERARD, as *Administrator, Respondent,* v. FRANK
PEASLEY, *Appellant.**

*Regal & McDonnell,* by *John Patrick Cook,* for appellant.

*Stubbs, Batali, Combs & Small,* by *Dino Batali,* for respondent.

WEAVER, J.—Defendant, Frank Peasley, appeals from a $36,400 judgment entered after a jury verdict in favor of plaintiff, the administrator of the estate of Melvin E. Ridenour, deceased. Decedent died as a result of injuries re-

*Reported in 403 P.2d 45.

ceived in a collision between decedent's Volkswagen and defendant's 1953 Ford F-100 pickup truck. The collision occurred at approximately 6 p. m. February 12, 1962 on the Eastsound-Westsound two-lane, two-directional road on Orcas Island. It was dark at the time; both cars had their headlights on; it was raining lightly; the pavement was wet. The only witnesses to the accident were defendant and decedent.

Obviously, had each car been on its own side of the road, the accident would not have happened. The fundamental question is, therefore, which automobile invaded the traffic lane of the other.

The questions of law raised by defendant's five assignments of error orbit around (a) the physical facts of the collision; (b) the testimony of defendant, Peasley; and (c) the questioned admissibility of expert testimony interpreting the physical facts.

### (a) Physical Facts

The road, bordered by timber, extends in a general north-south direction; it curves to the west. Decedent was driving north which would, ordinarily, place him on the outside of the curve; defendant was driving south.

Although examination of witnesses by defense counsel and his appellate brief hint that this was a head-on collision, the photographic evidence and defendant's testimony refute the suggestion. The front end of defendant's truck was not damaged. All damage to the truck was aft of the cab. The left side of the truck bed and the left rear wheel were knocked out of alignment and the left rear fender was crumpled. The impact moved the left side of the truck bed back from the cab rather than crushing it at right angle to the chassis. The impact to the truck was described as a "glancing blow on the left rear section" or a "scraping type of collision."

The left front portion of decedent's Volkswagen was pushed well back into the hood and the left front wheel was frozen at a 90-degree angle to the chassis. The left

front headlight was demolished and crumpled; the right headlight was not broken.

San Juan County deputy sheriff, Jack Young, reached the scene of the accident about 6:40 p. m. He testified that decedent's car and defendant's truck came to rest about 80 feet apart, each in its own lane of traffic. Defendant's truck was headed in a northerly direction (he had been proceeding south). Defendant testified that his truck came to rest at a 45-degree angle to the side of the road.

Officer Young testified that a skid mark, starting on decedent's side of the road near decedent's car, extended approximately 80 feet to near the right wheel of defendant's truck. "It appeared to be a trail of rubber."

He testified further that he found a pile of glass in "an area over 14 inches in diameter" which he believed came from the left headlight of the Volkswagen. The glass ". .. . was 18 inches in from the Ridenour [decedent's] vehicle on the Ridenour side of the center line." He found part of the glass windshield and broken pieces of chrome metal from the Volkswagen near the left side of the car on its side of the road. Each vehicle left an oil spot where it came to rest. The top of a large square porcelain washbasin was found in the middle of the road about half way between the final resting place of the two cars. The base of the washbasin remained in defendant's truck. Together, the two pieces weighed about 85 pounds. Defendant testified that the top flew off the truck and hit the front or top of the Volkswagen. In addition, the truck carried an inboard motor, and three one-horse-power electric motors.

The next morning state trooper James Palmer and Officer Young examined the vehicles and then visited the scene of the accident. The road was dry when they arrived. Although the cars had been removed, oil spots marked the locations where they came to rest. Officer Palmer observed some of the broken glass from the Volkswagen's left headlight at the point where Officer Young had seen it the previous night. Apparently someone had swept away some of the glass and had tossed the portion of the windshield to

the side of the road in order to remove a traffic hazard. Officer Palmer did not see a skid mark.

### (b) Testimony of Defendant

Defendant testified that he was driving 40 to 45 miles an hour. Before entering the curve, he saw headlights approaching. He dimmed his lights. On both direct[1] and cross-examination[2] defendant testified that he believed the approaching car was traveling at about the same speed he was. He testified unequivocally that he was driving on his side of the road. He said:

> Well, my wheels were over in my own lane and there shouldn't have been any need for it—the headlights passed me and there was a crash, the headlights passed the truck.

(Parenthetically, we note that this negatives the hint that this was a head-on collision.)

### (c) Expert Testimony

The court determined that state trooper Palmer's experience was sufficient to qualify him as an expert in the field of automobile accidents and collisions. Over objection of defense counsel, he was permitted to state his opinion in response to a hypothetical question involving the physical facts as we have outlined them (except as to the speed of decedent's car). He concluded that the collision occurred in decedent's lane of travel.

Captain Edward T. Corning of the Seattle Police Department, a qualified expert in the same field, testified for the defense. He examined the scene of the accident, inspected the damage to defendant's truck, and studied photographs of decedent's Volkswagen, which could not be located when Captain Corning made his investigation.

In response to the same hypothetical question propounded

---

[1]*Direct examination:* "A. Well, he was going quite fast, I couldn't say, it's hard to judge an oncoming car, *I mean he was going about the same I was.*" (Italics ours.)

[2]*Cross examination:* "A. It was coming at quite a good speed, *I would say it was coming about the same speed I was,* it's hard to judge speed of an oncoming car." (Italics ours.)

to state trooper Palmer, plus the added fact of the speed of decedent's vehicle, Captain Corning testified that, in his opinion the point of impact of the vehicles was approximately "half way between the position the cars were in when they were finally found." He testified that:

I could not with certainty testify which side of the center line the accident happened on.

The crux of this appeal is the admissibility of state trooper Palmer's testimony that, in his opinion, the vehicles collided on decedent's side of the road.

(We note that neither the evidence nor the hypothetical question takes into consideration the apparent difference in weight of defendant's loaded truck and decedent's Volkswagen.)

█ We have repeatedly declared that the decision upon the experiential qualifications of a witness should be left to the determination of the trial court. *Mason v. The Bon Marche Corp.*, 64 Wn.2d 177, 390 P.2d 997 (1964), and cases cited. Defendant has not demonstrated that the trial court abused its discretion when it found Palmer to be an expert qualified to state an opinion based upon the physical facts in evidence.

In three recent decisions, we have approved various facets of Rule 401 of the Model Code of Evidence of the American Law Institute. *McBroom v. Orner*, 64 Wn.2d 887, 395 P.2d 95 (1964); *Gerberg v. Crosby*, 52 Wn.2d 792, 329 P.2d 184 (1958); *Twidwell v. Davidson*, 54 Wn.2d 75, 338 P.2d 326 (1959). Model Code of Evidence rule 401, Ch. 5, Expert and Opinion Evidence, states:

Rule 401. TESTIMONY IN TERMS OF OPINION.

(1) In testifying to what he has perceived a witness, whether or not an expert, may give his testimony in terms which include inferences and may state all relevant inferences, whether or not embracing ultimate issues to be decided by the trier of fact, *unless* the judge finds
(a) that to draw such inferences requires a special knowledge, skill, experience, or training which the witness does not possess, or

(b) that the witness can readily and with equal accuracy and adequacy communicate what he has perceived to the trier of fact without testifying in terms of inference or stating inferences, and *his use of inferences in testifying will be likely to mislead the trier of fact to the prejudice of the objecting party.* (Italics ours.)

In *Gerberg, supra,* this court explored in depth the subject of expert opinion evidence. The court pointed out that it has long been recognized in this jurisdiction that a qualified expert is competent to express an opinion on a proper subject even though he thereby expresses an opinion on the ultimate fact to be found by the trier of fact. There are many matters about which the trier of fact may have a general knowledge but the testimony of an expert would still aid in his understanding of the issue. This, of course, is subject to the qualification that the opinion is not "likely to mislead the trier of fact to the prejudice of the objecting party."

In the instant case, the jury was not only instructed that they were the sole and exclusive judges of the credibility of the several witnesses and the weight to be attached to the testimony of each, but they were instructed (as suggested in *Gerberg, supra*):

You should consider such expert opinion and should weigh the reasons, if any, given for it. You are not bound, however, by such an opinion. Give it the weight to which you deem it entitled, whether that be great or slight, and you may accept or reject, according to your judgment of the reasons given for it.

Officer Palmer was a qualified expert; the subject-matter was a proper field for an expert opinion (the sufficiency of which is discussed *infra*); the jury was properly instructed. We fail to see how Officer Palmer's testimony could mislead the jury.

In an exhaustive annotation[3] in which many decisions are noted the commentator said:

---

[3] J. A. Tyler, "Admissibility of opinion evidence as to point of impact or collision in motor vehicle accident case" 66 A.L.R.2d 1048-75 (1959).

In a growing number of jurisdictions the courts have held that skilled or expert opinion evidence as to the point of impact or collision is admissible in motor vehicle accident cases upon the ground that a skilled or expert witness can aid the jury in drawing correct inferences from raw and unsorted facts. 66 A.L.R.2d at 1057 (1959).

Further,

The question of the admissibility of skilled or expert opinion evidence as to the point of impact or collision in a motor vehicle accident case rests largely within the discretion of the trial court, so that its ruling thereon will not be overturned upon appeal unless such discretion has been abused. 66 A.L.R.2d at 1053.

These rules, however, should be used with caution so that, as suggested in *Twidwell, supra,* the trials of automobile negligence cases do not become a contest between expert witnesses who, upon examining the exhibits and hearing the testimony, tell the jury which version of the accident is more worthy of belief and advise which party should recover. That is exactly what happened in *Twidwell.* This court said:

In effect, what was done in this case was to permit a police officer, after examining *one* photograph of each vehicle (taken after the accident) and a diagram drawn by one party showing their approximate positions at the time of and after the impact, to tell the jury whether, in his opinion, *the accident could have happened in the manner claimed by the opposing party.* (Italics ours.)

This was held to be an abuse of discretion by the trial court, and correctly so.

In the instant case the trial court did not err when it permitted the opinion testimony of Officer Palmer as to the point of impact, or in refusing to strike his testimony at the conclusion of his cross-examination.

Next, defendant urges that the court erred (a) when it failed to sustain a challenge to the sufficiency of plaintiff's evidence and (b) when it refused to direct a verdict for defendant at the close of the trial. We do not agree.

■   Circumstantial evidence without any direct eye-witness testimony can afford sufficient proof of the elements of a tort.[4]

In *Wise v. Hayes*, 58 Wn.2d 106, 108, 361 P.2d 171 (1961), the court said:

> Negligence can be proved by circumstantial evidence. Circumstantial evidence is sufficient to establish a *prima facie* case of negligence, if it affords room for men of reasonable minds to conclude that there is a greater probability that the conduct relied upon was the proximate cause of the injury than there is that it was not. [Citing authorities.]

The nature of the damage to each vehicle, the evidence of the location of the glass of the broken headlight and windshield, the location of the broken pieces of chrome metal, the skid mark, and the testimony of Officer Palmer are sufficient to present a jury question. Plaintiff's evidence meets the test of evidentiary sufficiency.

■   Finally, defendant contends the amount of the verdict is excessive. Decedent was 30 years of age. He had a life expectancy of 41 years. His annual earning was $3,000 to $3,500. The $36,400 jury verdict is within the ambit of the evidence.

The judgment is affirmed.

DONWORTH, OTT, and HAMILTON, JJ., and JOHNSON, J. Pro Tem., concur.

---

[4]See annotation: "Sufficiency of evidence, in absence of survivors or of eyewitnesses competent to testify, as to place or point of impact of motor vehicles going in opposite directions and involved in collision" by E. S. Stephens, 77 A. L. R.2d 580 (1961).