[No. 188-41337-2.   Division Two.   December 14, 1970.]

SAM TALLEY *et al., Respondents,* v. PAUL B. FOURNIER, *as Special Administrator, Appellant.*

*Parker & Parker* and *Lester T. Parker,* for appellant.

*J. K. Hallam* and *John E. Close,* for respondents.

ARMSTRONG, C. J.—In this host-guest action, the special administrator for the deceased defendant Gary Martin Krekow is appealing from a trial court judgment entered upon a jury verdict for $40,435.70 for personal injuries sustained by the plaintiff Kathleen Peterson Talley.

This action was the consequence of a tragic 1-car accident occurring on December 20, 1961, which took the life of Gary M. Krekow. On that morning the deceased and three young guest passengers left Hoquiam, Washington to visit the deceased's younger brother in Portland, Oregon. The automobile was owned and driven by the deceased.

It was raining extremely hard that morning, so hard that the state patrol officer who investigated the accident testified that his windshield wipers were ineffective in clearing the windshield for adequate vision. Testimony was given by the plaintiff, Kathleen Peterson Talley, that the automobile was being driven at speeds up to 90 miles per hour some time before the accident, but that the driver had decreased the speed when asked to do so. She also testified that the rainfall was "so bad that the wipers were practically ineffective".

About 4 miles north of Vancouver, Washington, on the old highway, the car suddenly left the blacktop portion of the highway as the deceased was negotiating a slight downhill curve. Clarence John Movius, the investigating officer, testified that from the skid marks he was able to determine that the car slid broadside for 192 feet on the dirt shoulder before it sheared off a telephone pole. The pole was located approximately 21 feet away from the traveled portion of the highway. The point of impact was on the left door, just ahead of the door handle. The impact with the pole was so severe that the frame of the car was pushed against the drive line. The automobile came to rest with the front part about 18 feet from the pole and the rear part about 9 feet from the pole.

The trial of this cause of action commenced on June 4, 1969, about 7½ years after the accident. At the time of the accident, the plaintiff was 17 years of age and this suit was commenced by the Talleys after the plaintiff reached her majority. Sam Talley was not married to Kathleen at the time of the accident.

During the 2-day trial the first witness called for the plaintiffs was State Trooper Movius, the investigating officer who reached the accident scene within 5 minutes. In addition to testifying as to many of the facts recited above, he stated that it was still raining very hard when he arrived at the scene of the accident. He testified that he had been a state patrol officer in Vancouver for 3 years before the date of the accident and that the legal posted speed

limit on that stretch of the highway was 50 miles per hour. He expressed his opinion, over the objection of the defendant, that a safe speed considering the weather and the road conditions was 40 miles per hour. Furthermore, Trooper Movius gave his opinion, over objection, that the speed of the vehicle before it left the blacktop was 60 miles per hour or better. In arriving at the estimated speed the following physical factors were considered: The length of the skid marks, road surface conditions, the fact that the tire tread was good, the damage to and location of the vehicle after it had sheared off the telephone pole, and the condition of the telephone pole— i.e., that it was a solid pole and not full of dry rot.

The plaintiff testified at the trial that she had not looked at the speedometer immediately before the accident, but that it felt about the same as when the car was previously traveling at 90 miles per hour. John Purdy, a passenger in the rear seat with the plaintiff, testified that the car was traveling about 55 miles per hour at the time of the accident. However, this testimony was sought to be impeached by plaintiff Sam Talley, the husband of the injured plaintiff. Mr. Talley testified as to a conversation he had with John Purdy in the hospital a few days after the accident. John Purdy allegedly told Mr. Talley that the deceased was driving at 80 to 90 miles per hour at the time of the accident, but that he, John Purdy, had told the state patrol officer 50 miles per hour because he felt Gary Krekow had been harmed enough.

At the close of the plaintiffs' case-in-chief, defense counsel stated that his witnesses were not present but that they were subpoenaed for the following morning at 9:30. Defense counsel further stated that only the other two guest passengers would be called as witnesses.

The next morning during his opening statement, defense counsel stated that he would also call Mr. Krekow, the father of the deceased driver, to the witness stand. Plaintiffs' counsel objected to Mr. Krekow becoming a witness because he stated he had relied on defense counsel's state-

ment of the previous day that only the two other guest passengers would testify. In the absence of the jurors the defendant then made an offer of proof. The substance of Mr. Krekow's testimony would have been that he was an experienced woodworker, that he had visited the scene of the accident the following day, and that he noticed that the telephone pole was full of dry rot. Defense counsel argued that this testimony was necessary to rebut the officer's testimony that the pole was a strong one and that his estimate of the car's speed would have been different if the pole was full of dry rot.

The plaintiffs' counsel argued that plaintiffs would be prejudiced in having Mr. Krekow testify. Plaintiffs' counsel stated that had he not been misled on the preceding day, he would have checked with the Northwest Bell Company in Vancouver during that afternoon to see if the company's records revealed the condition of the replaced pole. The trial judge noted that if Mr. Krekow were allowed to testify he would have to grant plaintiffs a continuance to give plaintiffs' counsel an opportunity to go from Montesano to Vancouver in order to check the telephone company's records. The trial docket would not permit a recess to the following day.

The plaintiffs' counsel stated that the state trooper had testified as to the condition of the pole during the previous day's morning session, at which time Mr. Krekow was seated at defense counsel's table. Plaintiffs' counsel overheard Mr. Krekow telling defendant's counsel that the pole was full of dry rot. The trial judge, in support of plaintiffs' counsel, stated that he also had overheard Mr. Krekow state at that time to defense counsel that the pole was full of dry rot. The trial judge ruled that under the circumstances, defense counsel had sufficient opportunity at the close of plaintiffs' case shortly after 4 p.m. to apprise the court and the opposing party that Mr. Krekow might be called as a witness. The court held that plaintiffs were prejudiced by the failure to give this information in re-

sponse to the court's questioning about additional witnesses.

When the defendant moved for a new trial on the grounds that it was improper for the court to refuse to permit Mr. Krekow to testify, the trial judge further stated that the failure to notify the court and the plaintiffs that Mr. Krekow might testify was an unfair trial tactic.

The defendant's first contention in this appeal is that the trial judge erred in refusing to dismiss at the close of the case because of the insufficiency of the evidence to show gross negligence. He argues that there was no corroborative evidence to support the testimony of the plaintiffs which would show gross negligence as required by RCW 46.08.080.[1]

We cannot agree with the defendant's contention in light of our Supreme Court cases which have interpreted gross negligence and the corroborative evidence requirement of the host-guest statute.

■ First of all, it is well settled that the issue of gross negligence should be submitted to the trier of fact where there is substantial evidence of serious negligence on the part of the host-driver. *Nist v. Tudor*, 67 Wn.2d 322, 407 P.2d 798 (1965). The case is taken away from the trier of fact only if the trial court can say as a matter of law that there is but one reasonable conclusion. *Hansen v. Pauley*, 67 Wn.2d 345, 407 P.2d 811 (1965).

■ Secondly, it is clear that not all the evidence testified to by the guest-plaintiff needs to be corroborated by

---

[1]RCW 46.08.080 provides: "No person transported by the owner or operator of a motor vehicle as an invited guest or licensee, without payment for such transportation, shall have cause of action for damages against such owner or operator for injuries, death or loss, in case of accident, unless the accident was intentional on the part of the owner or operator, or the result of said owner's or operator's gross negligence or intoxication, *and unless the proof of the cause of action is corroborated by competent evidence or testimony independent of, or in addition to, the testimony of the parties to the action: Provided,* That this section shall not relieve any owner or operator of a motor vehicle from liability while it is being demonstrated to a prospective purchaser." (Italics ours.)

independent evidence or testimony. *Trudeau v. Haubrick,* 65 Wn.2d 286, 396 P.2d 805 (1964). Where the cause of action is based in great part upon the excessive speed of the host-driver under the circumstances, physical evidence of the accident from which the trier of fact can infer speed, as presented by an investigating officer, may provide the required corroborating evidence. *Tyler v. Tyler,* 65 Wn.2d 102, 395 P.2d 1021 (1964).

Applying these rules of law to the facts in our case, it becomes evident that there was corroborative evidence to support the plaintiffs' testimony and that it was proper to submit the issue of gross negligence to the jury with proper instructions.[2] The officer testified that the car slid broadside for 192 feet on the shoulder, that it then sheared off a telephone pole and continued traveling for a short distance, and that the impact pushed the frame of the car against the drive line. Certainly the jury could reasonably conclude that an accident of this magnitude could be caused only if the host-driver was traveling at such excessive speed under the circumstances as to constitute gross negligence.

The defendant's second contention is that the investigating officer should not have been permitted to state his opinion either as to the estimated speed of the car at the time of the accident or as to a safe speed of travel under the circumstances. The defendant at trial also objected to the experiential qualifications of the officer.

██ Whether a witness qualifies as an expert is a matter left largely to the determination of the trial court. *Gerard v. Peasley,* 66 Wn.2d 449, 403 P.2d 45 (1965). In our case Trooper Movius had 3 years of experience in investigating traffic accidents at the time of the accident and about 10 years at the time of the trial. There is nothing in the record which would lead us to conclude that the trial court abused its discretion in deciding that Trooper Movius qualified as an expert.

---

[2]For an excellent discussion as to what constitutes gross negligence under the host-guest statute, see 41 Wash. L. Rev. 591 (1966).

■ Our Supreme Court has previously held that the estimated speed of a motor vehicle, as based on skid marks and other physical facts, is a proper subject for expert opinion. The determination of the rate of speed based upon such facts is not within the common knowledge of the jurors. *Knight v. Borgan,* 52 Wn.2d 219, 324 P.2d 797 (1958).

The trial court's admission of the officer's testimony of the estimated speed is further supported by the fact that the Supreme Court and the Court of Appeals in this jurisdiction have placed substantial reliance upon rule 401 of the Model Code of Evidence of the American Law Institute, chapter 5, Expert and Opinion Evidence. *Gerberg v. Crosby,* 52 Wn.2d 792, 329 P.2d 184 (1958); *Twidwell v. Davidson,* 54 Wn.2d 75, 338 P.2d 326 (1959); *McBroom v. Orner,* 64 Wn.2d 887, 395 P.2d 95 (1964); *Gerard v. Peasley, supra; Ward v. J. C. Penney Co.,* 67 Wn.2d 858, 410 P.2d 614 (1966); *Church v. West,* 75 Wn.2d 502, 452 P.2d 265 (1969); *Palmer v. Massey-Ferguson, Inc.,* 3 Wn. App. 508, 476 P.2d 713 (1970). Rule 401 provides:

Testimony in Terms of Opinion.

(1) In testifying to what he has perceived a witness, whether or not an expert, may give his testimony in terms which include inferences and may state all relevant inferences, whether or not embracing ultimate issues to be decided by the trier of fact, unless the judge finds

(a) that to draw such inferences requires a special knowledge, skill, experience, or training which the witness does not possess, or

(b) that the witness can readily and with equal accuracy and adequacy communicate what he has perceived to the trier of fact without testifying in terms of inference or stating inferences, and his use of inferences in testifying will be likely to mislead the trier of fact to the prejudice of the objecting party.

(2) The judge may require that a witness, before testifying in terms of inference, be first examined concerning the data upon which the inference is founded.

Defendant contends that the trial court erred in allowing the investigating state trooper to state his opinion as to a safe speed of travel at the scene of the accident under the circumstances. There are no cases directly in point on this issue in this jurisdiction.[3] We shall analyze this in terms of rule 401.

■ (1) In testifying as to what he perceived the investigating state patrol officer may give his testimony in terms which include inferences (opinions) whether or not the testimony embraces the ultimate issues to be decided by the trier of fact, unless the judge finds:

(a) That the state trooper was not qualified as an expert witness. (Here he clearly had the necessary qualifications because of his experience in accident investigation and his knowledge of driving conditions at the scene and time of the accident.)

(b) That the witness could readily and with equal accuracy and adequacy communicate what he perceived to the jury without expressing his opinion as to a safe speed at the scene and time of the accident *and* his opinion as to a safe speed would not mislead the trier of fact to the prejudice of the objecting party.

Turning to the first aspect of rule 401(1)(b), the witness could have given a description of the heavy rain, the curve in the road, the surface of the road and the other circumstances of the case. We need not determine whether the state trooper could "readily and with equal accuracy and adequacy communicate what he has perceived to the trier of fact" in a case in which the sole issue was to determine whether a particular speed was so fast under the circumstances that it established ordinary negligence. However, when the jury is asked to determine a higher degree of negligence as it is required to do in a host-guest action it becomes essential that the jury obtain the best available

---

[3]For a general discussion of the opinion evidence rule see *Gerberg v. Crosby,* 52 Wn.2d 792, 329 P.2d 184 (1958); and a comment on that discussion in *State v. Alden,* 73 Wn.2d 360, 438 P.2d 620 (1968).

assistance in determining whether the negligence is substantially or appreciably greater than ordinary negligence.[4]

We hold that in a gross negligence case a qualified expert witness may give his opinion of a safe speed at the scene and time of an accident if the witness cannot meaningfully communicate what he perceived to the jury without giving his opinion. This is a matter to be determined by the sound discretion of the trial court after carefully considering all facets of rule 401. We find no abuse of discretion in this instance. We do not decide whether this rule would be applicable in an ordinary negligence action because that question is not before us.

Nor do we see how the jury was misled by the opinion of safe speed to the prejudice of the objecting party. A proper foundation was laid for the opinion evidence by the experienced state trooper who was not only familiar with the curve in the road, having traveled it on many occasions, but who investigated the accident minutes after it occurred.

Opinion evidence of safe or prudent speed at the scene of the accident was admitted in two host-guest cases under somewhat comparable circumstances in *Ferguson v. Hurford,* 132 Colo. 507, 290 P.2d 229 (1955); and *Enos v. Montoya,* 158 Cal. App. 2d 394, 322 P.2d 472 (1958). At page 399 the California Court of Appeals stated:

> Where, as was here the case, the jury's knowledge of the roadway must be limited to that shown by the evidence, it would seem to be an unrealistic position to insist that what was a prudent speed on the subject curve was a matter exclusively within the jury's fact finding power which should not be "invaded" by opinion evidence. The proper rule would appear to be to allow such opinion evidence to assist the jury, if the jury, applying proper instructions, such as were here given, deems such evidence to be helpful.

If opinion testimony is admitted the trial court should, as was done in our case, give cautionary instructions to ad-

---

[4]For a discussion of the difference in standards of care and degrees of negligence between ordinary negligence and gross negligence see *Nist v. Tudor,* 67 Wn.2d 322, 407 P.2d 798 (1965).

monish the jury that they are not bound by such opinion and that it is their duty to determine the facts from all the evidence produced in court. *See Gerberg v. Crosby, supra.*

The defendant's final contention is that the trial court abused its discretion in excluding the testimony of Arnold Krekow, the father of the deceased defendant, to the effect that the telephone pole was full of dry rot. In reaching our answer to this contention, we must make a further review of the evidence.

The corroborative evidence of a high rate of speed was very strong even without the officer's opinion that the automobile was driven at a rate of speed of 60 miles per hour or better. It must be remembered that the officer had testified to the automobile failing to negotiate the slight curve, leaving 192 feet of skid marks on the dirt shoulder before shearing off the telephone pole, the impact of the pole crushing the body of the automobile so that the frame of the car was pushed against the drive line, and the automobile coming to rest with the front part 18 feet from the pole and the rear part 9 feet from the pole. These facts alone make the speed of 60 or better appear to be a conservative estimate. Nevertheless, the officer had testified that it was a solid pole and on a rigid cross-examination, he admitted that if the pole was in fact full of dry rot it would probably alter his opinion of the speed of the vehicle. The testimony of Arnold Krekow would have been probative evidence.

In deciding to exclude the testimony because of the prejudice to the plaintiffs, the trial judge took into consideration the assertions of plaintiffs' counsel that he heard Arnold Krekow tell defendant's counsel before the noon recess that the pole was full of dry rot. The trial judge also heard the conversation which he finally concluded took place before noon. There was cross-examination on the possibility of dry rot before noon and after noon. The plaintiffs rested before the normal closing hours of the court and the trial judge asked if the defendant could present any witnesses. Arnold Krekow was in the courtroom. Defendant's counsel stated that he had no other witnesses except the

two passengers who were subpoenaed to testify in the morning. He explained that he did not decide to call Mr. Krekow until he talked to him after court. The trial judge held that the failure to disclose the possibility of calling Arnold Krekow as a witness was an unfair trial tactic. The judge stated, "You can't trap the other side that way".

In determining whether the trial judge abused his discretion in refusing to permit the testimony of Arnold Krekow, we find no case precisely in point. It is a well recognized rule, however, that a trial judge presiding at a jury trial is not restricted to the function of a mere umpire in a contest between opposing parties. He is charged by law and conscience with the fundamental duty of seeing that truth is established and justice done, under the statutes and rules of law. His control of the situation should be manifest and complete at all times. It is the duty of the trial judge to see that neither side is overreached by unfair trial tactics. All matters relating to the orderly conduct of a trial, which are not regulated by a statute or a rule, are within the sound discretion of the trial judge. 88 C.J.S. *Trial* § 36 (1955). We find no abuse of discretion in this case.

Judgment affirmed.

PEARSON and PETRIE, JJ., concur.