[Nos. 218-41439, 41445-2.    Division Two.    December 18, 1970.]

VERNON R. PARRIS, *Respondent*, v. LEONARD T. JOHNSON *et al., Appellants*.

SHERMAN T. FRASE, *Respondent*, v. LEONARD T. JOHNSON *et al., Appellants*.

*Rutherford, Kargianis & Austin* and *Samuel C. Rutherford,* for appellants.

*Schumacher & Charette, John Schumacher, Parker & Parker,* and *Lester T. Parker,* for respondent Parris.

*Stanley J. Krause,* for respondent Frase.

ARMSTRONG, C. J.—In consolidated appeals the defendants seek to reverse trial court judgments entered upon jury verdicts in favor of Sherman T. Frase for $130,000 and in favor of Vernon R. Parris for $22,000.

These two cases are the result of an accident occurring on August 8, 1967 between 2 and 3 p.m. near the Clearwater Queets school building on Highway 101 about 60 miles north of Hoquiam, Washington. The accident involved two logging trucks and an automobile, which was driven by the plaintiff Sherman T. Frase.

The loaded logging truck driven by the plaintiff Parris collided with an unloaded logging truck owned by the defendant, Leonard T. Johnson and driven by his 19-year-old nephew, James W. Johnson. Diane Michalak, who has since married and is now Diane Sleeper, was a passenger in the Johnson truck. The plaintiff Parris' truck was traveling in a southerly direction up a slight incline at about 28 miles per hour. The Johnson truck, its trailer carried in a "piggyback" fashion, was traveling in a northerly direction at a speed estimated by plaintiff Parris to be 65 to 70 miles per hour.

The impact of the collision was so tremendous that it was described by Mr. Frase, who was following the Parris truck in his car about 150 feet to the rear, as looking like a small war. Unfortunately for Mr. Frase the defendant Johnson's truck continued traveling after the impact and struck the plaintiff Frase's car, totally demolishing the car and pushing it backwards for 35 feet into a ditch.

Mr. Frase was seriously injured and spent the following 4 months in the hospital. A serious injury to his hip, which has continued to deteriorate, caused him to be retired from the Hoquiam Fire Department under a disability pension.

The two truck drivers were treated at the hospital and spent one night there. Plaintiff Parris had his knees jammed against the dashboard and he bent the steering wheel with his chest and stomach. He also injured his hip and it bothered him to the time of trial.

The liability issue in both cases was, very simply, which logging truck was on the wrong side of the road when the collision occurred. Mr. Parris and Mr. Frase both testified that the Johnson truck began to slowly veer over into their lane of travel. Mr. Parris testified that he drove his truck onto the narrow shoulder on the right-hand side of the highway to avoid the collision. This testimony was corroborated by Mr. Frase, who said that at the time of the collision the right wheels of the Parris truck were on the shoulder and that it looked as if "he was going to drive off into the forest". The collision of the trucks was not directly head-on and both Mr. Parris and Mr. Frase testified that the Johnson truck hit on the left front of the Parris truck. Mr. Parris stated: "He hit my left front fender, bumper rather, the fender and wheel and brushed along my mirror and cab guard and ride bar before he hit the load and my drivers".

The defendant driver testified that he had always remained on his side of the road. He also stated, however, that he never saw the Parris truck leave its lane of travel. His version of the accident was that the Parris truck veered over into his lane of travel just as the two trucks were passing each other, with the front of the Parris truck hitting the front driver wheels located just behind the cab of the Johnson truck. He stated that this caused the Johnson truck to be pulled into the Parris truck, and into the opposite lane, sideswiping the Parris truck, and subsequently striking the plaintiff Frase's automobile.

Defendants' first contention is that the trial court erred in permitting State Trooper Jerry Brantley to testify that according to his postaccident investigation the point of impact between the two trucks was in the plaintiff Parris truck's southbound lane of travel. No challenge was made to the experiential qualification of the state trooper and the record clearly indicates that the trial court did not abuse its discretion in determining that he was a qualified expert.

It is well settled in this jurisdiction that a qualified expert may testify as to the point of impact, provided such

an inference from the facts is not a matter of such general knowledge as to be within the common experience of the jury. A qualified expert may express his opinion on any proper subject even if it is an opinion as to the ultimate fact to be decided by the jury, if such opinion is not likely to mislead the trier of fact. *Gerberg v. Crosby,* 52 Wn.2d 792, 329 P.2d 184 (1958). For a more complete statement of opinion evidence requirements see rule 401 of the Model Code of Evidence of the American Law Institute, chapter 5, Expert and Opinion Evidence.[1]

The thrust of defendants' argument, however, is that the officer's opinion as to the point of impact was based on insufficient factual data. Therefore, defendants argue that the trial court abused its discretion in admitting such opinion testimony.

In our case, the officer testified extensively as to what he had observed after he arrived at the accident. He stated that all three vehicles were in the same positions as they were after the collision, except that the Johnson truck had

---

[1]"Testimony in Terms of Opinion.

"(1) In testifying to what he has perceived a witness, whether or not an expert, may give his testimony in terms which include inferences and may state all relevant inferences, whether or not embracing ultimate issues to be decided by the trier of fact, unless the judge finds

"(a) that to draw such inferences requires a special knowledge, skill, experience, or training which the witness does not possess, or

"(b) that the witness can readily and with equal accuracy and adequacy communicate what he has perceived to the trier of fact without testifying in terms of inference or stating inferences, and his use of inferences in testifying will be likely to mislead the trier of fact to the prejudice of the objecting party.

"(2) The judge may require that a witness, before testifying in terms of inference, be first examined concerning the data upon which the inference is founded."

This rule has been cited with approval in *Gerberg v. Crosby,* 52 Wn.2d 792, 329 P.2d 184 (1958); *Twidwell v. Davidson,* 54 Wn.2d 75, 338 P.2d 326 (1959); *McBroom v. Orner,* 64 Wn.2d 887, 395 P.2d 95 (1964); *Gerard v. Peasley,* 66 Wn.2d 449, 403 P.2d 45 (1965); *Ward v. J. C. Penney Co.,* 67 Wn.2d 858, 410 P.2d 614 (1966); *Church v. West,* 75 Wn.2d. 502, 452 P.2d 265 (1969); *Palmer v. Massey-Ferguson, Inc.,* 3 Wn. App. 508, 416 P.2d 713 (1970); *Talley v. Fournier,* 3 Wn. App. 808, 479 P.2d 96 (1970).

been pulled sideways a short distance by a wrecker to make it possible to get to Mr. Frase, who was still pinned in his car. He made a diagram of the accident scene measuring relevant distances and noting where parts of the trucks had come to rest.

He testified that there were extensive gouges in the plaintiffs' southbound lane of travel, about 4 feet from the center lane. The gouge marks made by the Parris truck went south from the apparent point of impact to where the loaded Parris truck came to rest. Other gouge marks made by the Johnson truck went north to the point of impact with Mr. Frase's car and continued to where Johnson's empty truck came to rest. The left front tire of the plaintiff Parris' truck was flat and the tie rods underneath on the left side had been broken. The front left wheel of the Johnson truck had been broken off. Tire marks showed that the right front wheel of the Parris truck started from the right gravel shoulder and curved across the highway to the truck's resting place.

We hold that a sufficient factual foundation has been laid for the state trooper's opinion as to the point of impact between the trucks. The foundation for the opinion could be and was adequately explored on cross-examination.

We note with approval that the trial court followed the safeguard suggested in rule 401(2): "The judge may require that a witness, before testifying in terms of inference, be first examined concerning the data upon which the inference is founded."

The defendants' next contention is that the trial court erred in admitting evidence and impeachment testimony as to the defendant James Johnson's activities during the evening before the accident. Defendants rely on the rule that evidence tending to impeach a witness on a collateral matter is inadmissible. *Getchell v. Auto Bar Systems Northwest, Inc.*, 73 Wn.2d 831, 440 P.2d 843 (1968).

This point of contention developed when Mr. Johnson and Mrs. Sleeper gave conflicting testimony as to how they had met on the morning of the accident. On direct exami-

nation both of them testified that he had picked her up early that morning in Aberdeen. Mr. Johnson also testified that he had spent the previous night at his apartment in Montesano.

During cross-examination of Mrs. Sleeper by counsel for plaintiff Parris, the following conversation transpired:

Q. How long were you with Jimmy the night before? A. How long? Q. (Nodding head in the affirmative). A. The whole night. There was a group of us. Q. You were with him all night? A. Not just me. There was a whole bunch of us. Q. Where did you spend the night before? A. At my girlfriend's. Everybody just stayed up all night. Q. And Jimmy stayed up all night with you? A. As far as I know, yes.

Counsel sought to limit the cross-examination of James Johnson, arguing that what he did the night before was a collateral matter and irrelevant to the case. The trial court denied the motion and gave as one of its reasons that James Johnson's activities during the previous night had a direct bearing upon his physical condition and his driving the next day. We agree.

The accident occurred on a bright, clear afternoon. According to the testimony of both plaintiffs, the Johnson truck began to slowly veer into the lane of travel of the Parris truck. Any evidence which could explain the driver's lack of alertness or momentary inattention was relevant to the issues in this case. Attending an all night party on the previous evening could explain why he crossed the center line.

Defendants' third contention has a 2-fold thrust. They maintain that medical evidence is necessary to support a claim of disability and that the damages awarded for personal injuries to Vernon R. Parris were excessive. A more complete analysis of the facts is necessary for our determination of this issue.

The impact of the collision between the oncoming logging truck was so tremendous that plaintiff Frase described it as looking like a small war. The Parris truck was thrown into

"a sort of semi-jackknife" and "wound up in a ditch on the opposite side of the road". Mr. Parris' knee was jammed into the dash and he bent the steering wheel with his chest and stomach. His hip was injured in the crushing effect of the impact.

He was taken to the hospital for the night and received treatment. His doctor and hospital bill was less than $100.

Mr. Parris testified that his hip still bothers him. He has a little trouble climbing stairs but his "real discomfort comes from sitting in the truck".

The trial court instructed the jury to consider in assessing general damages, "The nature and extent of his injuries, any disability, if any and a reasonable value of medical care, treatment and services".

It has been held that the testimony of the plaintiff and his lay witness may make a case for the jury without medical evidence where the plaintiff was injured in an automobile accident and sustained shock followed by pain in his head, back and eyes. *Carr v. Martin,* 35 Wn.2d 753, 215 P.2d 411 (1950). *See also Clark v. Josephson,* 66 N.W.2d 539 (N.D. 1954). The case at bar adds the additional element of "disability".

The only cases in our state which discuss disability and the need for medical evidence relate to awards under the workmen's compensation act. Since they relate to industrial disability which affects the earning capacity of the injured workman, we find them of little value in a tort case. *See Henson v. Department of Labor & Indus.,* 15 Wn.2d 384, 130 P.2d 885 (1942).

In considering the meaning of the term "disability" we frequently think in terms of impairment of work capacity. That is probably the easiest form of disability to translate into pecuniary loss. There are, however, other activities which are compensable under the general term of disability. "Man does not live by bread alone" nor does his life consist solely of performing the tasks necessary to buy that bread. In the 24-hour day one-third may be devoted to work, one-third to sleep and one-third to leisure. An im-

pairment of any one of these aspects of life may constitute a disability. *See* 9 Blashfield, Automobile Law and Practice § 386.3 (3d ed. 1967).

Although disability exists as a distinct element of damages, it is frequently a natural concomitant of pain and suffering. The relationship between disability and pain and suffering may be direct or indirect, but the two are so frequently interwoven that a clear distinction cannot be made in many instances. *See* 9 Blashfield, Automobile Law and Practice § 387.6 (3d ed. 1967). For a summary of compensable elements of damage in a personal injury action see 3 L. Frumer, Personal Injury § 3.04(1) (1965).[2]

Turning now to the question of whether expert testimony is necessary to establish the nature, extent and probable duration of injuries, we find that it is not always required. In a suit for personal injuries plaintiff must show the nature, extent and duration of his injuries by a preponderance of the evidence. Medical testimony is necessary when the question of injury or its extent and duration requires a special skill or knowledge to establish that it actually exists. If the common experience of ordinary men is sufficient to resolve the question of whether an injury occurred, or the extent and duration thereof, from nonmedical testimony, the jury can be allowed to receive the issue on the basis of lay testimony alone. *See Skeeters v. Skeeters,* 237 Ore. 204, 389 P.2d 313, 391 P.2d 386 (1964).

The violent nature of the impact, the crushing type of bodily injury, and the resulting hip symptoms do not present an issue which would require medical testimony to resolve.

Medical testimony may, of course, be used for the pur-

---

[2]"The elements of compensatory damages for personal injuries are: (1) pain incident to physical injury, commonly called physical pain; (2) various forms of mental suffering and anguish; (3) actual loss of time or earnings and impairment of earning capacity; (4) reasonable cost of necessary medical treatment, hospital care, nursing services, and related expenses; (5) *physical disability or what is popularly referred to as the incapacity to lead a normal life;* and (6) other expenses incurred because of the injuries." (Footnote omitted. Italics ours.)

pose of increasing or minimizing the amount of damages. We have not found, nor have defendants pointed to any cases holding that substantial damages for personal injuries may not be awarded in absence of medical testimony, whether the elements of damage be termed injury, pain and suffering or disability.

In the case at bar the total verdict for plaintiff Parris was $22,000. Under plaintiff's theory, the property damage and loss of use of the truck totaled $17,399.30 and therefore the amount allowed for personal injuries would have been approximately $4,600. Under defendants' theory, the apportionment of damages for property damage and loss of use of the truck would have been $13,891.47 and the amount allowed for personal injuries would have been approximately $8,000. The jury could reasonably have accepted plaintiff's theory.

An appellate court will not interfere with a verdict of a jury fixing damages unless the amount be so outrageous that it shocks the sense of justice and sound judgment of the court. *Kramer v. Portland-Seattle Auto Freight, Inc.*, 43 Wn.2d 386, 261 P.2d 692 (1953). We do not find the verdict in this case to be excessive whether we compute the personal injury award at $4,600 or $8,000.

We have considered the other assignments of error and we find that they do not have merit.

Judgment affirmed.

PEARSON and PETRIE, JJ., concur.