[No. 37506.   Department Two.   September 23, 1965.]

MARTHA C. POSTON, as *Executrix, et al., Appellants,* v.
GERALD CLINTON *et al., Respondents.*\*

*Geo. W. Young,* for appellants.

*Raftis & Raftis* and *Randall, Danskin, Lundin & Allison,*
for respondents.

SHORETT, J.†—Two automobiles collided on a paved high-

\*Reported in 406 P.2d 623.

†Judge Shorett is serving as a judge pro tempore of the Supreme
Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

way divided by a white center strip. The decedent, Cecil Poston, was driving in a southerly direction in his Rambler automobile and was accompanied by Alfred B. Froelich. The other car was a Ford, driven in a northerly direction by Gerald Clinton. As a result of the collision, Poston was killed and Froelich and Clinton seriously injured. The place of impact is critical, since obviously one car crossed the white center line.

These actions were brought by Poston's executrix and by Froelich against Clinton and his copartners, upon whose business Clinton was alleged to have been engaged at the time of the accident. The Poston and Froelich complaints alleged that the proximate cause of the accident was Clinton's intoxication and driving into the wrong lane of traffic. The defendants denied the allegations of negligence and, in the Poston case, alleged by way of affirmative defense that the accident was caused by Poston's negligence. The defendants also filed a third party claim against the General Telephone Company of the Northwest, whose vehicle was parked nearby and whose employee was alleged to have negligently left a measuring wheel on the traveled surface of the highway, causing or contributing to the accident. The defendants asked judgment for their damages against the third party defendant.

The jury's verdict was returned in favor of the defendants Clinton, et al., and the third party defendant, General Telephone Company, without the award of any damages to any party. Post trial motions were denied and judgment entered dismissing the plaintiffs' complaints and the defendants' claim against the third party defendant. The plaintiffs appeal from the dismissal of their actions. There is no appeal by the defendants from the dismissal of their action against the third party defendant.

Appellants' assignments of error may conveniently be grouped in four categories as follows: (1) the failure of the trial court to grant their motions for directed verdicts; (2) the trial court's rejection of evidence of Clinton's alcoholic blood test; (3) the trial court's allowing expert witnesses

to give their opinions as to the point of impact; (4) giving instruction No. 6 on the subject of contributory negligence of the decedent Poston.

On the first point, we think the trial court properly refused to grant a directed verdict in favor of the appellants. The evidence with reference to the point of impact consisted of circumstantial evidence (such as the debris on the highway, a long gouge in the pavement evidently made by the Clinton automobile, the position of the cars after the accident), the testimony of eyewitnesses and expert witnesses as to the point of impact. There was sufficient evidence from which the jury, as trier of the fact, could find that the point of impact was in either the northerly or southerly traffic lane or the jury could have believed that there was no preponderance of evidence in favor of either side.

The next assignment of error relates to the trial court's exclusion of the results of Clinton's blood alcohol test. For an understanding of this question, it is necessary to examine the testimony bearing upon the taking of the blood sample.

The accident was investigated by Chief Deputy Sheriff Irving Potvin, who made an examination of the cars at the scene. Having detected the odor of alcohol in the Clinton vehicle, Potvin reported this fact to the sheriff and prosecutor of the county and was "instructed to go to the hospital and get a blood sample for an alcohol test." Upon arriving at the hospital, Officer Potvin assisted the hospital staff in moving Clinton from the emergency cot to a hospital bed. The officer testified that Clinton was conscious and freely gave his consent to the taking of the blood sample. However, Clinton's attending physician, who was not present at the time the sample was taken, testified that in his opinion the defendant Clinton was in a state of shock and not mentally qualified to consent to the giving of the sample. In a pretrial affidavit, Mr. Clinton stated that he had no recollection of anyone asking for a blood sample, or of his consenting to the taking of the sample.

The importance of the blood sample evidence is apparent

from the reading which was 0.210, which is well above presumptive intoxication under RCW 46.56.010. The testimony surrounding the circumstances of the taking of the blood sample was heard by the trial court in the absence of the jury, such testimony being received in the form of an offer of proof. The trial court concluded that Mr. Clinton had not given conscious consent to the taking of the blood and, therefore, the evidence should be barred under RCW 46.56.010, reading:

Nothing herein contained shall be construed as requiring any person to submit to a chemical analysis of his blood, and the refusal to submit to such an analysis shall not be admissible in evidence in any criminal prosecution for a violation of the provisions of this section or in any civil action.

We reject the argument that consent of the person from whom the blood is taken is unnecessary under this statute. The words "Nothing herein contained shall be construed as requiring any person to submit to a chemical analysis of his blood . . . ." indicate a legislative intent that consent must be obtained from the tested person.[1] If the respondent was in such a state of shock that he couldn't give conscious consent, the evidence was inadmissible. If he gave consent, the evidence was admissible.

The trial court decided this issue of fact by rejecting the deputy sheriff's testimony and accepting the respondent's version. But this was a jury case and issues of fact were exclusively with the jury. *Trosper v. Heffner*, 51 Wn. 2d 268, 317 P.2d 530 (1957); *Shaw v. Browning*, 59 Wn.2d 133, 367 P.2d 17 (1961). The trial judge adopted a proper procedure in excluding the jury to first determine if there was to be evidence of consent, but once it became apparent

---

[1]This interpretation is not at odds with our holding in *Zenith Transport v. Bellingham Nat'l Bank*, 64 Wn.2d 967, 395 P.2d 498 (1964), when evidence of the alcoholic content of blood taken from a dead person by the coroner under authority of RCW 68.08.106 was held admissible. A variety of constitutional and statutory provisions have been relied upon in other cases. See *State v. Cram*, 176 Ore. 577, 160 P.2d 283, 164 A.L.R. 952 (1945); *Breithaupt v. Abram*, 352 U.S. 432, 1 L. Ed. 2d 448, 77 Sup. Ct. 408 (1957); *Lebel v. Swincicki*, 354 Mich. 427, 93 N.W.2d 281 (1958).

that such testimony would be presented, the jury should have had all the evidence, including the result of the blood test. Appropriate instructions should advise the jury to disregard such evidence unless the jury first found that respondent's consent to such test had been given. It is easy to speculate that the jurors would be prejudiced by the high alcoholic reading (0.210) even if consent is not found, but wisely or not, our system leaves the resolution of issues of fact on conflicting evidence to the jury. Error was committed by the trial court in not submitting the question of respondent's consent to the jury.

The respondent asserts that, even if it was error to bar the results of the blood test, the question is moot because Laws of 1965, Ex. Ses., ch. 155, § 60 (4) would bar the evidence upon a retrial. Section 60 (4) reads:

> Evidence of the chemical analysis or scientific breath test of any kind of such person's blood shall not be admissible unless such person shall have been advised by the person giving the test before giving the test that such person has the constitutional right not to submit to such test. Evidence taken in violation of this act shall not be admitted in evidence in any criminal or civil proceeding.

Respondent then argues that the statute relates to the "remedies of the parties, rather than to their substantive rights, and this fact eliminates any objections to its retrospective application in this case." Respondent cites *Kenney Presbyterian Home v. Kenney*, 45 Wash. 106, 88 Pac. 108 (1906), wherein it was held that evidence admissible at the time of the transaction was barred by subsequent legislative act; and *Pape v. Department of Labor & Indus.*, 43 Wn.2d 736, 264 P.2d 241 (1953), holding that a legislative extension of the statute of limitations operated retrospectively because it dealt with the matter of remedy. The court there said, p. 741:

> The question whether a statute operates retrospectively, or prospectively only, is one of legislative intent. In determining such intent, the courts have evolved a strict rule of construction against a retrospective operation, and indulge in the presumption that the legislature

intended statutes or amendments thereto to operate prospectively only. 50 Am. Jur. 495, Statutes, § 478. It is not necessary, however, that the statute expressly state that it shall operate retrospectively, if such intention can be obtained from the purpose and method of its enactment.

This general rule of construction, that the legislature intended an act to operate prospectively only, is not applied when the statute relates to remedies only, and does not affect vested rights. In the absence of language showing a contrary intent, a new law changing a remedy is generally regarded as applicable to all remedies—those which have accrued and those which will accrue in the future. *Nelson v. Department of Labor & Industries,* 9 Wn. (2d) 621, 115 P. (2d) 1014.

We adhere to the rule stated in the above cases, but think that the legislative intent is clear that the 1965 act operates prospectively because of the requirement that the person giving the test advise the person being tested of his "right not to submit to such a test." The legislature, evidently, adopted a standard by which officers should be governed in taking alcoholic blood tests in the future. Although the act effects only a remedy, the requirement of a particular warning indicates a legislative intent that it apply to tests made after the effective date of the act.

Next, appellants contend that respondents' expert witnesses should not have been permitted to give opinion evidence as to the place of impact.

Two of the witnesses (Sheriff Albert E. Holter and State Patrol Sergeant Jewel A. Ransom) were actively in charge of the investigation for their respective offices. Each possessed impressive qualifications in the field of traffic investigation and had conducted a prompt inquiry of the circumstances of this accident. The trial judge properly allowed these experts to give opinion evidence as to the place of impact. American Law Institute's Model Code of Evidence, Rule 401; *Gerberg v. Crosby,* 52 Wn.2d 792, 329 P.2d 184 (1958); *Twidwell v. Davidson,* 54 Wn.2d 75, 338 P.2d 326 (1959); *Gerard v. Peasley, ante* p. 449, 403 P.2d 45 (1965).

Respondents' other expert witness, Lee Ketchum, had no official responsibility in the investigation, but had been a

private consultant on automobile accidents for 14 years, had investigated 50 to 75 accidents, and testified in court numerous times.

Mr. Ketchum did not visit the scene until 1 or 2 months after the collision. He examined the two vehicles, looked at the gouge mark on the pavement through a magnifying glass, testified that the gouge was caused by a broken part of the Ford car, and gave his opinion as to the place of impact.

■ A wide discretion must be granted the trial judge in exercising his judgment and common sense in determining limits upon expert testimony. *Gerberg v. Crosby, supra;* 66 A.L.R.2d 1053.

In the recent decision of *Gerard v. Peasley, supra,* this court again approved the discretionary rule, but added the following qualification:

> These rules, however, should be used with caution so that, as suggested in *Twidwell, supra,* the trials of automobile negligence cases do not become a contest between expert witnesses who, upon examining the exhibits and hearing the testimony, tell the jury which version of the accident is more worthy of belief and advise which party should recover.

We cannot say that the trial court abused its discretion in permitting Ketchum's testimony. However, upon a retrial, we suggest that the trial court consider the statement above quoted from *Gerard, supra,* together with other relevant factors before again deciding whether Ketchum will be permitted to testify as to the place of impact.

The last assignment of error relates to instruction No. 6, which reads:

> In the Poston case, Plaintiff, Martha C. Poston, is suing as administratrix of the estate of Cecil Poston, her deceased husband. Hence, the community property laws of this State regarding this type of situation are now explained to you.
>
> If, from a preponderance of the evidence and in the light of all these instructions, you find that, at the time and place of the accident, (1) decedent Cecil Poston was driving the Poston vehicle; and (2) that vehicle was then

and there the property of the community (or family) consisting of decedent Cecil Poston and of plaintiff Martha C. Poston; and (3) that decedent Cecil Poston was then and there negligent in his operation of the vehicle; and (4) his negligence was a proximate cause or one of the proximate causes, as explained to you elsewhere in these instructions, of that collision; then his negligence is by operation of law imputed to plaintiff Martha C. Poston, and you are required by law not to give any verdict to plaintiff Martha C. Poston as administratrix of the estate of Cecil Poston, her deceased husband.

Appellant does not attack this instruction as an improper statement of the law, but contends that instruction No. 3 (the customary contributory negligence instruction) covered the subject adequately and that the addition of instruction No. 6 "had the effect of unduly emphasizing the rule of contributory negligence against the Poston estate."

We think that some instruction such as instruction No. 6 was necessary so that the jury would clearly understand that contributory negligence of a decedent driver is imputed to his personal representative.

Judgment reversed with instructions to grant a new trial.

ROSELLINI, C. J., DONWORTH, WEAVER, and HAMILTON, JJ., concur.

December 20, 1965. Petition for rehearing denied.