[No. 2315-1. Division One. May 19, 1975.]

DON LATHAM, *Appellant,* v. WILLIAM F. HENNESSEY, *as Administrator, Respondent.*

*Lanning, Mahoney & Bryan* and *Phil Mahoney*, for appellant.

*Adair, Kasperson, Petersen & Hennessey* and *William F. Hennessey*, for respondent.

SWANSON, J.—Don Latham appeals from a trial court judgment denying his creditor's claim against the estate of his deceased wife, Loretta Testall Latham. His primary assertion of error is that the trial court should have permitted his claim on the theory that he has an interest in certain property acquired by his wife during the course of the parties' prior meretricious relationship, which interest is either a "community" interest or an interest arising out of a joint venture or implied partnership.

Appellant's assignments of error may be summarized as follows: (1) The trial court erred in failing to conclude that there was a joint venture or implied partnership relationship between the parties; (2) the trial court erred in failing to determine that a "community property" interest supported appellant's claim; (3) the trial court erred in permitting certain testimony claimed to be irrelevant and damaging to the character of the decedent; and (4) the trial court erred in allowing certain statements claimed by appellant to be inadmissible hearsay and in excluding certain testimony on the ground that its admission would violate the deadman's statute, RCW 5.60.030.[1]

---

[1] Appellant's assignments of error Nos. 7, 9, and 10, which need not be described here, are not supported by argument and therefore will not be considered. *State v. Reader's Digest Ass'n*, 81 Wn.2d 259, 501 P.2d 290 (1972); *National Bank of Commerce v. Fountain*, 9 Wn. App. 727, 514 P.2d 194 (1973). In any event, in view of our opinion herein, such assignments of error are without merit.

In considering appellant's first contention, that there was an implied partnership or joint venture relationship between the parties originating during their prior meretricious relationship which vested in appellant his claimed property interest in the decedent's estate, we note that the trial court, after hearing conflicting testimony, included in its findings of fact the following:

That plaintiff had lived in a meretricious relationship with the decedent from approximately May, 1955 until the date of their marraige, June 16, 1970.

Finding of fact No. 4.

That at the time of the commencement of the aforesaid meretricious relationship, the parties were living in a certain house owned by the decedent as her separate property. That thereafter, and many years prior to the marriage of the parties, the original house in which the parties then lived was sold and in its place, there was substituted from the proceeds of said sale the house situated at 102 North 77th Street, legally described as follows:

The West 10 feet of Lot 19 and all of Lot 20, Block 3, Cloverdale Addition to the City of Seattle, as per plat thereof recorded in Volume 4 of Plats, page 7, records of said county.

Finding of fact No. 5.

That the real property described in the preceding finding, together with all property described in the inventory in the aforesaid probate cause, constituted the separate estate of decedent.

Finding of fact No. 6.

That notwithstanding the foregoing, as an incident to the relationship between the plaintiff and the decedent, plaintiff performed certain labor and assisted in the remodeling of the homes in which he and the decedent lived and did advance certain sums for her benefit. Such work and payments were merely an incident to the relationship between the plaintiff and the decedent, and did not give rise to any change in their respective property rights, by operation of law or otherwise.

Finding of fact No. 7. Although appellant assigns error to findings of fact Nos. 6 and 7, we are persuaded by our review of the record that these findings are supported by substantial evidence and therefore we accept them as verities. As such, the findings are determinative of appellant's contentions.

 Respondent correctly states that the four essential elements of a joint venture are (1) a contract, (2) a common purpose, (3) a community of interest, and (4) an equal right to a voice accompanied by an equal right of control. *Refrigeration Eng'r Co. v. McKay*, 4 Wn. App. 963, 486 P.2d 304 (1971). The trial court's findings do not reflect the presence of all four of these elements, and therefore there can be no joint venture. In *Refrigeration Eng'r Co.* this court recognized, at page 973, that "[t]he relationship of a joint venture may be inferred from the facts of a case and the contract may either be express or implied." (Citation omitted.) Similarly, as appellant points out, our state Supreme Court observed with reference to a claimed implied partnership based upon a meretricious relationship in *In re Estate of Thornton*, 81 Wn.2d 72, 80, 499 P.2d 864 (1972):

> In the case of such an asserted *partnership to operate a business for profit*, it need only be shown that a contract of partnership can be implied from the facts and circumstances of the case. The existence of an express contract need not be proven prior to the introduction of such circumstantial evidence.

Nevertheless, the *Thornton* case is not of assistance to the appellant in his contention that the trial court should have found a joint venture or implied partnership here. As stated in *Thornton*, at page 79:

> The law of implied partnership is accurately stated in *Nicholson v. Kilbury*, 83 Wash. 196, 202, 145 P. 189 (1915):
>
>> The existence of a partnership depends upon the intention of the parties. That intention must be ascertained from all of the facts and circumstances and the actions and conduct of the parties. While a contract of partner-

ship, either expressed or implied, is essential to the creation of the partnership relation, it is not necessary that the contract be established by direct evidence. The existence of the partnership may be implied from circumstances, and this is especially true where, as here, the evidence touching the inception of the business and the conduct of the parties throughout its operation, not only tends to show a joint or common venture but is in the main inconsistent with any other theory. *Bridgman v. Winsness*, 34 Utah 383, 98 Pac. 186. It is well settled that no one fact or circumstance will be taken as the conclusive test. Where, from all the competent evidence, it appears that the parties have entered into a business relation combining their property, labor, skill and experience, or some of these elements on the one side and some on the other, for the purpose of joint profits, a partnership will be deemed established.

In *Thornton*, the court considered the foregoing principles and concluded that the plaintiff there—the surviving partner of a meretricious relationship—had stated a prima facie case for the existence of an implied partnership and therefore the trial court erred in dismissing her claim. In this case, there is no dispute that appellant has a prima facie case and, indeed, unlike the situation in *Thornton*, this case was heard on the merits resulting in a decision against the appellant's claim of a joint venture or implied partnership. There is nothing in the trial court's findings of fact which supports appellant's contention that he and the decedent either expressly or impliedly intended a *business* relationship in connection with the purchase and repair of the property in question. *See In re Estate of Thornton, supra*; *Omer v. Omer*, 11 Wn. App. 386, 523 P.2d 957 (1974). On the contrary, as indicated by finding of fact No. 7, work and payments contributed by the appellant were merely an incident to his personal relationship with the decedent. This finding, and other findings consistent with it, support the trial court's implicit conclusion that the appellant's creditor's claim was properly disallowed by the administrator of the decedent's estate insofar as such claim was founded in an alleged joint venture or implied partnership.

■ Appellant next argues that he has a "community interest" arising out of the parties' meretricious relationship. The general rule in Washington remains that stated in *Creasman v. Boyle*, 31 Wn.2d 345, 351, 196 P.2d 835 (1948):

> [P]roperty acquired by a man and a woman not married to each other, but living together as husband and wife, is not community property, and, *in the absence of some trust relation*, belongs to the one in whose name the legal title to the property stands.

(Citations omitted.) Appellant argues that because this rule was severely criticized in *In re Estate of Thornton, supra*, it should be rejected in this case. In *Omer v. Omer, supra* at 390, decided subsequent to the trial in this case but prior to oral argument, this court stated with reference to the rule:

> Because of the harshness of the announced rule, certain theories have been established as exceptions. In many instances these theories require fictional applications. Examples are (1) implied partnership or joint venture, *In re Estate of Thornton, supra*; (2) constructive trust, *Humphries v. Riveland, supra* [67 Wn.2d 376, 407 P.2d 967 (1965)]; (3) resulting trust, *Walberg v. Mattson*, 38 Wn.2d 808, 232 P.2d 827 (1951); (4) express or implied contract (to make a will), *In re Estate of Thornton, supra*; and (5) community property interest arising out of a long-term stable meretricious relationship, *In re Estate of Thornton, supra*.

Further, in *Omer*, this court, although suggesting as did the *Thornton* court that the *Creasman* rule should be abandoned, determined at page 392 that *Thornton* "compels adherence to the traditional approach . . ." and therefore *Creasman* is controlling unless the parties' situation is accommodated by a recognized exception. *See generally* I. Baxter, *Marital Property* §§ 35:1-:7 (1973); W. DeFuniak & M. Vaughn, *Principles of Community Property* § 56.8 (2d ed. 1971); Annot., 31 A.L.R.2d 1255 (1953).

In this case, we have determined that the trial court's findings preclude application of the exception for an implied partnership or joint venture and appellant has failed

to carry his burden of proving that he is protected by any of the other exceptions. *See In re Estate of Thornton, supra; Omer v. Omer, supra.* Moreover, the use of exceptions to avoid the "harshness" of the *Creasman* rule suggests the influence of equitable considerations which are not present here. *See Omer v. Omer, supra* at 390, 393. The record establishes that appellant is assured of a one-half interest of the property in question by operation of the decedent's will. There was no error.

Appellant's third contention is that the trial court was prejudiced by the admission of certain testimony which he argues was damaging to his character and that of the decedent. Specifically, he suggests that the trial court was influenced by evidence of the decedent's relationship with her daughter who, as the interested heir to the estate, will benefit most directly from the denial of appellant's claim. We are persuaded by respondent's argument that the challenged testimony was relevant to the primary issue before the court—the nature of the parties' intention with reference to a possible implied partnership or joint venture—and if there was any error, it was harmless. Appellant directs our attention to the trial court's oral opinion and suggests that the court improperly determined the intention of the parties from the content of the decedent's will, but it is apparent from the full text of the oral opinion that the court was persuaded primarily by factors other than the will. In this connection, the court stated in part:

> I believe that her intention, as evidenced by that will, is quite clearly a recognition of the debt that she did owe Don Latham for all that he did for her, as the friends mentioned, that he was a person who had indeed been good to her and kind to her when she really needed help. I believe that what she conferred upon him, however, was an undivided one-half interest in all of her property as of the time of her death. I believe that many of the remarks that were overheard by people, friends and family, when the property was spoken of by her, it had a perspective [*sic*] quality to it. I think the things she did not do are as convincing as anything. She was a woman who had had a divorce. She had certain experiences, she

had certainly demonstrated certain kinds of insecurity in her relationship with others, and had she wanted to vest Mr. Latham with a one-half interest presently, there were plenty of opportunities for that to have happened. When they sold the property, she could have had the deed determined in such a way that she could have conferred upon him whatever interest she desired at that point. She did not do that. She did nothing, as a matter of fact, to vest him with any ownership interest. And, in fact, on the contrary, seemed to be protecting herself over the years, and giving her that option to have her own property in the event things did not work out, even though she did have, as I say, this recognition of the relationship that she and Mr. Latham shared.

■ Finally, appellant objects to the trial court's failure to exclude certain hearsay statements by the decedent offered by defense witnesses on the ground that the statements were not against the pecuniary and proprietary interests of the decedent and therefore were inadmissible. *See Blair v. McKinnon*, 40 Wn.2d 492, 244 P.2d 250 (1952); *Allen v. Dillard*, 15 Wn.2d 35, 129 P.2d 813 (1942). The trial court accepted the contention of the defense that such statements properly could be considered in rebuttal to testimony by appellant's witnesses as to statements made by the decedent against her interest. We are of the opinion that any error in the admission of such testimony was harmless. Appellant further contends that the trial court erred in excluding certain testimony by him and by the decedent's former husband to the effect that they were under the impression that appellant and decedent were business partners. He argues that such "impression testimony" does not violate the deadman's statute and therefore is admissible because of what is said in *Jacobs v. Brock*, 73 Wn.2d 234, 437 P.2d 920 (1968). It is doubtful that the offered testimony, particularly that of appellant which counsel's offer of proof indicates would constitute at least indirect testimony revealing statements by and transactions with the decedent, may be deemed mere "impression testimony" such as is recognized in *Jacobs. See Lappin v. Lucu-*

*rell*, 13 Wn. App. 277, 534 P.2d 1038 (1975); *King v. Clodfelter*, 10 Wn. App. 514, 518 P.2d 206 (1974). In any event, similar testimony was already before the court through witnesses who were not barred by the deadman's statute and therefore the "impression testimony" offered by appellant is cumulative at best and, as such, any error in its exclusion may be deemed harmless.

Affirmed.

CALLOW and ANDERSEN, JJ., concur.

Petition for rehearing denied July 16, 1975.

Review granted by Supreme Court September 23, 1975.