[No. 2651-2.  Division Two.  January 31, 1978.]

JOYCE THORNTON, *Appellant*, v. LEONIDAS ANNEST, *Respondent*.

*Kerry D. Kidman, Albert Morrow,* and *Sullivan, Morrow & Longfelder,* for appellant.

*Allan R. Billett* and *Comfort, Dolack, Hansler, Hulscher, Rosenow, Burrows & Billett,* for respondent.

PEARSON, C.J.—On November 16, 1973, Dr. Leonidas Annest, a general surgeon, removed the appendix and fallopian tubes of the 29–year–old plaintiff, Joyce Thornton. She brought this action, claiming physician malpractice for the unnecessary removal of her tubes and the resulting sterilization. In support of her appeal from a jury verdict in favor of defendant, plaintiff assigns error to the denial of her motion for a directed verdict, to the denial of her motion for a partial directed verdict on the issue of whether an informed consent was given, and to three evidentiary rulings. We affirm.

When considering the trial court's ruling on plaintiff's two motions seeking a directed verdict, the evidence and all reasonable inferences therefrom must be viewed in a light most favorable to the defendant. No element of discretion is involved. "It is only when the court can say that there is no evidence at all to support the party opposing the

motion that such a motion can be granted." *Kaiser v. Suburban Transp. Sys.*, 65 Wn.2d 461, 463, 398 P.2d 14, 401 P.2d 350 (1965); *Rhoades v. DeRosier,* 14 Wn. App. 946, 546 P.2d 930 (1976); *Zwink v. Burlington Northern, Inc.,* 13 Wn. App. 560, 536 P.2d 13 (1975). With this rule in mind, we review the evidence, disregarding the contrary or disputed testimony.

On November 14, 1973, plaintiff experienced nausea, with pain in the pelvic area. She talked with Dr. James Reed, a military physician with whom she was acquainted. Dr. Reed referred her to defendant, who admitted her to a hospital, where he took her medical history and conducted an examination.

Defendant testified that plaintiff told him she had suffered from pelvic inflammatory disease when she was 17 years of age, and again at 22, and that she had been experiencing her third episode of the disease for the past 4 months, during which time she had been receiving penicillin treatments. Defendant testified that Dr. Reed also told him plaintiff had pelvic inflammatory disease, with persistent pelvic pain for the past 4 months, which had not responded to penicillin therapy.

Defendant's presurgery diagnosis was that plaintiff most likely had recurrent pelvic inflammatory disease, with appendicitis a possibility. The exploratory surgery was done on November 16, 1973, for the purpose of determining the cause of and the appropriate treatment from her symptoms. Defendant's testimony and his surgical reports indicate that he found plaintiff's appendix acutely inflamed and gangrenous, and both fallopian tubes afflicted acutely and chronically with pelvic inflammatory disease. From his visual examination during surgery, defendant described the tubes as reddened, thickened, covered by adhesions, and filled with pus; the finger–like fimbriae at one end of each tube were fused and attached to the ovaries.

Two expert witnesses were given a hypothetical set of facts based upon plaintiff's records and Dr. Annest's testimony. The facts included a patient with a history of pelvic

inflammatory disease, and fallopian tubes that contained pus, with fimbriated ends which were fused and adherent to each ovary. Both experts testified that under the facts of the hypothetical case, removal of the tubes met the standard of proper and reasonable medical care. This testimony constituted substantial credible evidence to support the jury verdict. *ZeBarth v. Swedish Hosp. Medical Center,* 81 Wn.2d 12, 499 P.2d 1, 52 A.L.R.3d 1067 (1972).

Plaintiff contends, however, that the uncontroverted physical evidence is irreconcilable with Dr. Annest's description of the condition of the tubes, and such physical evidence must control. *Bunnell v. Barr,* 68 Wn.2d 771, 415 P.2d 640 (1966). Plaintiff specifically refers to the pathology reports that indicated the central cavity, lumen, of the section of the fallopian tubes which was examined was open, patent, and that there was no evidence of luminal disease in the inner wall of the tubes.

The rule relied upon by plaintiff is that "where the physical facts are uncontroverted and speak with a force that overcomes all testimony to the contrary, reasonable minds must follow the physical facts . . ." *Mouso v. Bellingham & N. Ry.,* 106 Wash. 299, 303, 179 P. 848 (1919). The qualifications to this rule appear in *Bunnell v. Barr, supra* at 775–76:

> This rule, however, does not apply when the physical facts in evidence go no further than to simply cast doubt upon the credibility of a witness or a party. On the contrary, to properly apply the rule, the physical facts in evidence must not only be undisputed, they must also be consistent with each other and, when taken together, be manifestly irreconcilable with the countervailing oral testimony. In short, the established and undisputed physical facts must be such as to irresistibly lead reasonable minds to but a single conclusion.

(Citation omitted.)

There are two reasons this rule does not apply to this case. First, the so–called "physical facts" are not necessarily irreconcilable with the oral testimony. Dr. Charles C. Reberger, a pathologist who examined the tubes, issued a

supplementary report to the effect that the tubes had characteristics consistent with *chronic* disease, namely, a woody, rigid texture, blunting of fimbria, and the increased presence of fibrous tissue. He testified that the inner wall of the tube does not always reflect the presence of disease. He further testified that while the examined section of the tube was "patent,"[1] there could have been an obstruction in a different, unexamined location, and that a functional obstruction was possible. He also stated that pus could have been held in the tube because the fimbriated ends could have been sealed where they were attached to the ovaries. Thus the pathologist's report was not necessarily irreconcilable with defendant's clinical findings.

Secondly, while the pathologist's findings are in a sense "physical facts," their significance depends upon the opinion of the pathologist. To the extent his findings conflict with the clinical findings (opinion) of defendant, they merely cast doubt upon the latter's credibility. The trier of fact is entitled to accept or reject the opinion testimony of any expert where his testimony conflicts with the opinion of another. *Miller v. Kennedy,* 11 Wn. App. 272, 522 P.2d 852 (1974). There is no occasion to apply the uncontroverted facts rule. *Bunnell v. Barr, supra.*

Plaintiff also alleges the trial court erred in denying her motion for a partial directed verdict on the issue of informed consent. That issue was submitted to the jury by an instruction which is not challenged on appeal. The same rule which applies to directed verdicts generally is applicable to this issue, and we must view the evidence and all reasonable inferences in a manner most favorable to defendant.

Defendant testified that prior to surgery he told plaintiff that he felt her problem was recurrent pelvic inflammatory disease, and that he wanted to conduct an exploratory

---

[1]The term "patent" was used to signify that the tube was open and free of obstruction.

operation to better ascertain her condition. He further testified that he told plaintiff if the disease were extensive it could necessitate the removal of her tubes and uterus, and that he would remove anything necessary to alleviate her abdominal problem. He testified that plaintiff consented to the surgery and said that she wanted him to do everything proper for her. The record also contains a written "informed consent" form, signed by plaintiff, for an exploratory laparotomy and for procedures which the doctor may consider necessary or advisable in the course of the operation.

Plaintiff claims that defendant failed to inform her before surgery of alternatives which were *feasible* methods of treatment. Plaintiff presented evidence of four possible alternative courses of action: antibiotic treatment, surgical aspiration of pus, hysterosalpingogram x–ray test, and consultation with a gynecologist. Antibiotic treatment and aspiration of the pus were established only as alternative treatments for *acute* and not *chronic* stages of the disease. The x–ray test and consultation with a specialist were suggested as possible means of evaluating the extent of damage to the diseased tubes, and not as an alternative *treatment*.

Whether an alternative treatment is feasible under the physical condition of a particular patient so as to require the doctor to disclose such alternative to the patient is a question for the jury. Only feasible and available treatment must be disclosed. *Miller v. Kennedy, supra.* Under the physical conditions described in this case, the jury was entitled to believe the disease to be *chronic,* rather than *acute,* and not susceptible to either antibiotic treatment or surgical aspiration of pus.[2] The x–ray test or consultation with a gynecologist were not established as alternatives for treating the disease, but alternatives in diagnosing the extent thereof. The jury was entitled to

[2]There was evidence that a salpingogram was contraindicated under the circumstances, and that antibiotic therapy had previously been ineffective treatment.

believe defendant and the experts called on his behalf that he complied with the proper standard of care in performing the exploratory surgery as a method of diagnosing plaintiff's symptoms. Once the extent of disease was disclosed at the time of surgery, the jury could ascertain whether defendant complied with the requisite standard of care in removing the tubes.

Two evidentiary rulings which excluded offered evidence are challenged on appeal. We find no abuse of discretion on either of them. In the examination of Dr. Lasersohn, a pathologist, plaintiff asked if the doctor "had ever heard" of a surgical procedure of removal of fallopian tubes for either acute or chronic salpingitis. The trial court sustained a defense objection to this question. In the first place, immediately before this question was asked, Dr. Lasersohn testified that he had never "seen" a specimen of tubes which had been removed for either acute or chronic salpingitis. This testimony was within the doctor's own knowledge and allowed plaintiff to argue the unusual nature of the surgery performed by Dr. Annest.

Secondly, what Dr. Lasersohn "heard" concerning the specific surgical procedure was not directly relevant to the ultimate question of whether the procedure was consistent with the requisite standard of care in this particular case. A trial judge has wide discretion in determining the limits upon expert testimony. *See Poston v. Clinton,* 66 Wn.2d 911, 406 P.2d 623 (1965). We find no abuse of discretion in this ruling.

Similarly, plaintiff also attempted to ask Dr. Huish, one of defendant's experts, in cross–examination, whether he had ever performed a bilateral salpingectomy, or whether he knew of any board–certified obstetrician–gynecologist who had performed this surgery. Defense objections were sustained. The scope of cross–examination is within the discretion of the trial court. *Smith v. Seibly,* 72 Wn.2d 16, 431 P.2d 719 (1967). While the relevancy of this type of question is questionable, we favor the court's allowing liberal cross–examination, particularly where the answers may

tend to impeach the expert's opinion on the ultimate issue in question. While we consider the question asked of Dr. Huish to be proper cross–examination for possible impeachment purposes, we do not believe reversible error occurred from the exclusion. Plaintiff was allowed to cross–examine Dr. Huish extensively concerning the acceptable use of therapeutic bilateral salpingectomy, and Dr. Huish did testify on cross–examination that over the past 20 years removal of the tubes was not generally performed as a therapeutic measure for salpingitis. Furthermore, three other physicians, including defendant, testified that the procedure was not a common one. The excluded evidence was cumulative and the error, if any, was harmless. *Latham v. Hennessey*, 13 Wn. App. 518, 535 P.2d 838 (1975), *aff'd*, 87 Wn.2d 550, 554 P.2d 1057 (1976).

Finally, Dr. Reberger, who prepared a supplemental pathology report, was allowed to testify to statements made to him by Dr. Annest regarding the history of the patient and the condition of the tubes, as observed in surgery. Dr. Annest made the statement when he requested Dr. Reberger to prepare the supplemental report. The report was based upon Dr. Reberger's review of the specimens in view of the additional history.

Testimony concerning these statements was objected to on grounds they were hearsay statements. We find no merit in the challenge to this evidence. The statements were allowed not to prove their truth, but to form a part of the basis for his opinion. As such, they were not hearsay, but proper as a foundation for the opinion. *See Kennedy v. Monroe*, 15 Wn. App. 39, 547 P.2d 899 (1976).

Judgment affirmed.

PETRIE and REED, JJ., concur.